You may proceed. Thank you, Your Honors. May it please the Court, my name is Micah Block and I'm here on behalf of plaintiff and appellant Paul Blumberg. I will watch my clock and endeavor to reserve five minutes for rebuttal. This is Mr. Blumberg's second time before this Court in his civil rights suit alleging procedural violations in connection with his 1998 trial. The District Court erred below by holding that none of Mr. Blumberg's claims survived the HECBAR, and by failing to address, let alone grant, Mr. Blumberg's well-founded request for leave to amend that complaint. There are two ways that defendants have sought to carry their burden to find something in the record to support the District Court's erroneous results. First, the insulation doctrine under Jackson v. Barnes, and second, the requirement that Mr. Blumberg be acquitted of the 2012 conviction. That might be the problem with your case, because when your client pled guilty, so that's the second conviction. So we're talking about a second case, not really a first case like that. The state judge said, well, he asked, there was really no allocution of guilt. They go through the elements a bit, but there's usually an allocution of guilt. In this particular case, the part parties said it's all in the police reports. And the police reports, of course, are the things that are under attack, under HEC. So the words that even you use in your brief are a clean conviction, entirely or completely insulated. If the record shows that they have to look at the plea below, as we were asked by the defendants here, how is that a clean conviction or completely insulated? Sure. So I would say first that at the plea hearing, there was a stipulation that there was a factual basis in the record. That is, there were facts to support the plea. I think that the factual basis of the plea in the absence of a more detailed allocution is simply the admission to the elements as pled in the complaint to which Mr. Bloomberg admitted. As to insulation, Your Honor, it's important to recognize... But when you say that the police reports provide the basis for the plea, and I mean, in state court, that's frequently done. Essentially, you're saying everything in there goes to support my guilt. And then if you want to come up later on this and attack it under a 1983, as Judge Quist was saying, you're going to have to look at what the concern is. I think Jackson v. Barnes is your best case, and it stands for the proposition that a subsequent conviction does not necessarily bar a 1983. But I think Judge Quist has pointed out, which might be the weakness in the dike, that you stipulated to the police reports as a factual basis for the plea. So how can you now bring a 1983 based on what was said in the police reports without attacking the validity of the conviction? Well, I respectfully disagree with that characterization of the import of the stipulation that there is a factual basis for the convictions to which Mr. Bloomberg pled in those police reports. I don't think the import of that stipulation is that every fact or statement that's in those police reports is necessarily admitted as true. And in fact, I don't believe those reports are in the record after the panel's ruling on the request for judicial notice, but... If you ask us to, one of the relief you want is either reversal or send it back. Yes, Your Honor. Send it back to Judge Riehl and have him go. I guess we just didn't want to go through the record ourself at this point in time. It was a last minute request, by the way. And I'm very happy to address that, Your Honor. I think that there are claims. The question, as I understand it, is, is it possible for Mr. Bloomberg to prove his Section 1983 claims without undermining his 2012 conviction? Okay. So that's where I want to get to the real issue. We've spent all this time talking up here. Let me see if I have it straight. The false... Let's go to the false evidence. That related to whether there was a gun in 1995. Is that right? That's one example, Your Honor, correct. Of false evidence. So then the question is, if you could sue under 1983 on this false evidence about whether there was a gun in 1995, would that in any way implicate that he pled guilty in 1990 or 1997? Is that right? When he pled guilty? The guilty plea was in 2012, Your Honor. 2012. I'm sorry. But his plea then doesn't have anything to do with 1995. Is that correct? That's exactly correct. So the violations that Mr. Bloomberg complains of relate to other events separate from the events in connection with he entered a plea. One is the 1995 arrest. The second is the so-called park shooting that occurred 11 days before the shooting of Ramon Zuniga. Okay. So the 1995 event is the gun. When he does plead, he pleads to a charge with a gun, correct? A charge... Correct. He pled guilty... A gun. A special allegation of personal use of a firearm in connection with the shooting. That's correct, Your Honor. Is there anything in the record that would suggest that that has anything to do with what is now admittedly false evidence in 1995? Absolutely nothing, Your Honor. Okay. So now then you move to the essentially Brady violation, which is the shooting on these gangs 11 days before. There's also a Brady violation, Your Honor, in connection with suppression of the evidence about Officer Hewitt's... I know, but see, I think that's the problem. Everything's like this. I want to go item by item. Yes, Your Honor. So now explain to me on the Brady violation. He has a shooting 11 days before. What, in your view, is the relation or absence of relation to what he pled to then 11 days... With the crime 11 days later? Sure. So completely separate events 11 days apart. Mr. Bloomberg can prove the materiality of the Brady violation in connection with the Park shooting to the outcome of his 1998 trial by showing that that Brady violation was material to the proof of allegations and crimes that formed a part of the 2012 plea in particular in 1998. I mean, that to me is the question because you could have a Brady violation over here and then it gets fixed because, of course, you have all these appeals and things happen and now the Brady violation is fixed. So now that evidence is available to come in to a later trial. Do you agree with me that far? I believe I do, Your Honor. Okay. I think that's insulation. It could come in to a later trial. So then the question I guess we have here is, is there a relationship in this case to that evidence and what he pled to? I don't think that there is a relationship. So I think the answer is no. Certainly what he pled to was a separate shooting and what that evidence was used to prove in 1998 included the charge for conspiracy to commit murder and action for the benefit of a gang, both of which led to ---- But if there isn't any relationship to the plea, then why is the remedy that you get a new trial? You get to set aside his plea. No, that's not the question here. That's not what you're asking. Aren't you asking to have a civil rights case? Absolutely, Your Honor. Okay. So now let me ask you this because we've seen these cases before. Articulate to me what his potential damages are from the false testimony and the Brady violation. You know, what's he going to tell the judge or the jury in his 1983 case? Well, I'd start by saying he does not need a compensatory damages claim because there are nominal and punitive damages available. There's also been cases that have respected a right to attorney's fees in the first trial, emotional distress, things of the like. In terms of compensatory damages, there's been an argument by the defense that Mr. Bloomberg cannot recover because he was sentenced in 2012 to a term of 13 years, and it was stipulated that it was a time-served sentence. Mr. Bloomberg has an argument that had he been sentenced to 13 years at the close of his 1998 trial, he would have been released earlier. See, to me, that's where you fall off the cliff, okay? And you can help me if I'm wrong. Sure. All up to there was a 1983 case in which he might get zero, $1, or a whole bunch more. Who knows? Yes, Your Honor. But once you go down the road to implicating his sentence, then it seems to me you're in the heck country. So I want to be 100 percent clear that Mr. Bloomberg concedes that he can have no compensatory damages recovery based on incarceration to the extent of the sentence validly imposed and received after the 2012 guilty plea. He does have an argument that had that sentence been imposed earlier, he would have ultimately spent less time in prison. So there is a compensatory damages argument there. I guess I'm still having a little trouble unpacking that from heck, because that really does go to the sentencing. And you're saying, well, there's a little bit different timing. He might have had less because he would have come out of the whole situation earlier. Yeah. Well, I'm not 100 percent sure I understand the concern. Because I'm not quite getting the claim on that one. So I just want to make sure I understand. Let me try to clarify, Your Honor. Mr. Bloomberg was sentenced to 13 years in 2012. That is a valid sentence that he does not contest, that he need not contest for any reason, that he won't seek damages by contesting in any way. Well, and it was better than the first time he was facing a life sentence, right? Six years to life. That's exactly right, Your Honor. And then he got a determinate sentence and credit for time served. A determinate sentence of 13 years. And he had credit for time served. Stipulated that the time served satisfied it. And his claim then is on that aspect. What's his claim? His claim is that the extent of a valid sentence in this case is 13 years. Had he been sentenced to 13 years at the outset, because of good time credits, he would have been released earlier than he ultimately was. So he has spent more time incarcerated than he would have based on the valid sentence imposed in 2012 that he does not challenge or seek to undermine in any way. Well, I guess I hear you, but I'm just having a little trouble still. So help me out. We don't know that, had this all come up earlier, that he would have gotten the 13, that 13 years would have been the sentence. I mean, it is now. We now know. But we don't know if we backed it up. Isn't that a certain amount of speculation? Sure. But that's not the question, I think, Your Honor, is for materiality. Mr. Bloomberg has to prove that the outcome of the 1998 trial would have been different. And I think we have especially good evidence of that here because of the outcome of his 2012 plea proceeding. And Mr. Bloomberg has to concede that 13 years, the sentence later imposed, was valid. And so he cannot seek any damages for anything beyond that. But he had a longer sentence beforehand and would have spent less time had that been imposed at the outset. But you're essentially saying that the 13 years is a valid plea, but it's not a valid plea because it was imposed in 2012 instead of 1998, which there's... I apologize for interrupting, Your Honor. Not at all. Not at all. It was valid. And had that been the only sentence that Mr. Bloomberg ever received, he would have spent less time in prison than, in fact, he did. But it's also based on the same police reports that existed back in, you know, previously. And that's what you say is the basis for the plea. So it is hard to unpack. No, Your Honor. And I would point to Ove v. Gwynn and Lockett v. Erickson, in which this case has very clearly said that a conviction based on a plea derives from that plea. Now, in this case, there was a stipulation at the plea colloquy that there is a factual basis for that plea in the police reports. That means there exists in the police reports facts sufficient to provide a factual basis for the plea. It does not mean that every fact, including facts related to things never charged, charges dismissed, things never proved, are to be held against Mr. Bloomberg. I have only about a minute remaining. I want to reserve that one. Yes. Thank you, Your Honor. Good morning, Your Honors. David Meritu on behalf of Defendant Hewitt. I may please the Court. Maybe I'll pick on you right away, too, like I did your colleague over here. Going through HECC, there are several things that have to be met, and I, in my own notes, outlined the last one is. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit. How is the, well, let me put it this way. How is the defendants here going to prove that the action will undermine the conviction in the second case where he pled guilty? Are you relying on the documents in the police reports, or what is it about the second conviction that makes it uninsulated or linked somehow to the first conviction? Thank you, Your Honor. I will address that. I just wanted to note that we've decided to split our time up. Yeah, I wanted to ask you. And I apologize for the length. It's going to take only five minutes. How long? Each of us are going to take five minutes. Okay. So we're already at now down two minutes. But in terms of your question, Your Honor, our position is that the way the court should approach Brady cases like this where you have a guilty plea is that you have to consider the guilty plea and any facts established by the guilty plea in determining the materiality of the Brady claims. So here what you have is plaintiff is alleging that the Brady evidence, and I'm just for shorthand referring to the Brady evidence. It applies to the fabrication of evidence as well. But the Brady evidence, but for the Brady violations, he would have been able to show that or undermine the conclusions of intent to commit attempted murder, the conspiracy conviction, and the gang enhancement. So he is connecting all of those to the same evidence, the same Brady tainted evidence. And so to show that his Brady claims are material, he's necessarily going to imply the invalidity of his guilty plea because he's in effect saying, although I admitted that I intended to shoot and to kill Mr. Zuniga, we can't really have confidence in that because those facts are questionable because of the Brady. No, see, I think it's a little bit different. I see it as saying, look, they didn't fork over the evidence, okay, which he views as a constitutional violation. And whether they forked it over or not, he pled guilty to something over here. So he doesn't get his conviction undone. He's stuck with that. And if you were to determine that the government or various of these actors committed a constitutional violation, why does that implicate his conviction? Because now, Your Honor, he has to show that what he's arguing is that the Brady evidence was all related to the gang-related aspect of the offense. That's really what it all goes to. So he's saying, if I had had this Brady evidence, I could have shown that I could have made that questionable, those determinations questionable. I could have undermined the gang-related aspect to these offenses. That's what he would have to say to show that his Brady claims are material. And if he has to argue that, his intent, he's saying in his complaint, his intent is based on that exact same evidence. So the intent required for the conviction of attempted murder with a gun, how is that different from or is it the same as the intent that was required for Mr. Blumberg's initial conviction? Is there a difference in the intent? He's alleging it's the same. He's alleging that all the Brady-tainted evidence went to his intent, went to the gang enhancement. Okay, so can Mr. Blumberg maintain a 1983 action based on allegedly false testimony in his initial trial, even if he concedes that he had the criminal intent that the false testimony sought to prove? Is that what you're saying? I think they're inconsistent positions. He can say that, but they're inconsistent. He can say, listen, I admit that I, for attempted murder, that I admit to the intent. But he's kind of ignoring what the implications of that are. He has to for his Brady claim. If the court approaches Brady claims in this context where you factor in the guilty plea, if you ignore the guilty plea, that's different. But we don't think that's the approach this court should take. The court should factor in the guilty plea. Otherwise, you're running afoul of Brady because you're essentially saying, even though now we know that this was not really a material error, it didn't rise to that constitutional error, we're going to sort of ignore that and pretend like it did. I don't think that's the approach the court should take. Okay, that's not what happened, though, is that what you're saying is there's a constitutional violation here. It could be material. In other words, the materiality doesn't go to his guilt. Materiality goes to whether it should be turned over and whether it should play a role, assuming you went on to trial and you used that evidence. But he may have the narrowest possible window of a claim. He may not have any damages, for example. But I don't see how claiming that the government violated his constitutional right here implicates his conviction, even if he has a bad 1983 claim. I'd like to address that, Your Honor. I'm going to let you address it, and I'll tell you why. With the timing, is that okay? I know, but the issue applies to all of you, and it's the hazard of splitting your time, and I'm sure they appreciate that. So I'm just going to have you answer that question because it's a question that goes to all of you. Let me just take one last stab, and then I'm going to turn it over to counsel, which is that, again, if you're analyzing Brady, you have to determine whether the Brady violations were material. And how could they be material here? If he says he's alleging that the gang-related aspects to the offense are relevant, it's the foundation for his intent, it's the foundation for the gang enhancement, and it's the foundation for conspiracy. How can you then say that if that would have been undermined had I had the Brady evidence, now that we know that I've admitted to intending to murder Mr. Zuniga? Does he have a gang enhancement in his plea? He does not. No, he does not, because it doesn't factor into his ultimate conviction. He doesn't need to have it in his plea because he's saying the same evidence that's relevant and supports his intent is the same evidence that supports the gang enhancement. So how can he then say that evidence, we can't really have confidence in that evidence? Well, that means we can't have confidence in his guilty plea because we can't have confidence that he actually really did. There really is a basis for his intent to commit the murder. It seemed to me if you had the gang in the guilty plea, you'd have a better argument, but I want to hear from your co-counsel. Thank you, Your Honor. Good morning, Your Honor. Can I just ask a quick question? I just want to introduce myself quickly. Mike Allen. I'm sorry. I apologize. I would like to articulate in a different way why the evidence is relevant to the second conviction, and then if I could really quickly get to that. Fire away, my friend. And also address how the lawsuit, if successful, would also imply the invalidity of the sentence, because Heck says if it implies the invalidity of a conviction or a sentence, the lawsuit can't proceed. So quickly to respond to Your Honor's question about how the Brady evidence implicates the second conviction. This is a case about an individual plaintiff who was in a vehicle with his brother driving one day. We know all the facts. Okay. Well, this is why it's important, because to prove the intent. See, according to Plaintiff, he said he had no idea that his brother was going to get out of the car and start shooting at somebody. He said that he was completely oblivious to that. The theory to prove that he had the requisite intent was that there was this gang rivalry theory, and there was a prior offense 11 days earlier, a signature shooting. And they said, look, how could you say you didn't have the intent? You're in the middle of this gang rivalry with this other guy that was shot. You were involved in a very similar shooting. All the Brady evidence in this case went to impeach the prosecution's evidence that there was a gang rivalry and that there was a signature offense. For example, one of the pieces of Brady evidence was that one of the witnesses said it was too dark to see whether it was, in fact, plaintiff shooting or not, 11 days. Well, I understand that plaintiffs are arguing that would only go to impact the gang enhancement, but it also went to intent. And as you see here, the second conviction was for attempted murder. And one of the elements to prove attempted murder is intent. So tell me how it goes to intent unhinged from the gang. Unhinged from the gang. Well, I think unhinged from the gang is the gang rivalry is the intent. There was no evidence that he was intending to shoot Zuniga for a financial profit. There was no evidence that the intent was because there was some other, you know, grudge between the two. The only evidence of intent was the gang rivalry theory and the signature offense. So I don't think you can separate the two. So you're saying, though, that, okay, it's the same intent on both of the cases. Exactly, Your Honor. But, all right, I'm just trying to kind of, it is, this is, it's just different. And so if he pled guilty and admitted the intent based on the police reports, that he can't, he can't claim damage from the false testimony without implicating the validity of his sentence. Exactly. Or the validity of the conviction because intent is, it's all. It's intertwined. In fact, the gang enhancement and the conspiracy theories, I want to add, are not distinct crimes. You know, for example, the conspiracy, it was a conspiracy to commit not, you know, robbery, not conspiracy to, you know, to do anything else other than attempt to murder Zuniga. So the elements, it's not a separate and distinct crime, the conspiracy. And the reason the police reached, as Your Honor's well know, are for various reasons. I mean, the plaintiff, you know, he felt that that was an improper, you know, conviction and an improper sentence. He could have told the dean's office, I'm not taking that. Let's go to trial. There's no way you have enough evidence to convict me with a Brady-Evans. But he realized that he had a problem. Even with a Brady-Evans, it was going to be, you know, difficult to attack that. And if I'd like to quickly, I know that I have three and a half minutes left and I would like to reserve some time. Well, you're going to have, I'm going to give you a couple more. You can stop at two because I'm going to give her her time as well. I'd like to quickly get into the whole how it impacts a sentence. And I dug deep. And I actually pulled an old decision by Judge Quist that you wrote in a case called McCarthy v. Robichon, which is reported at 2006 Westlaw 233-1171. It was a heck case. And Your Honor cited to a case in the United States Supreme Court, Wilkinson v. Dotson, which is a 125 Supreme Court, 1242 at page 1248, where the United States Supreme Court said, if success in an action would necessarily demonstrate the invalidity of a confinement or its duration, heck applies. And this is where I get into the argument that. That's the second half of his argument. Exactly. He said that if the plea had been reached in 1998 with the good time, wartime credits, which are speculative whether he would have received them, he would have spent less time than the 13 years he spent. I'm a little less troubled by that allegation. Okay. Because it does go to the sentence than the front other allegations. Okay. But I think there's no. I think Plaintiff's counsel has admitted today and in the reply papers on their brief at page 24 that they are attacking the duration. They're saying the 13 years was too long. You know, I would have spent less if this plea had been entered in on day 1 in 1998. Okay. And we'll see about two minutes now. So I appreciate the time, Your Honors. Thank you. And I'll leave it to my colleague. Would you please put five minutes back on the clock for her? For the city. Good morning, Your Honors. Deputy City Attorney Wendy Shapiro on behalf of the City of Los Angeles. My argument is not about heck. My argument goes to an alternate grounds to affirm the dismissal. And that alternate grounds was raised in the answering brief of the City of Los Angeles on judicial estoppel. And this is certainly a case that warrants a determination that judicial estoppel apply. Mr. Blumberg has made multiple inconsistent statements for the purpose of benefiting himself and does yet again in order to proceed with the Section 1983 claim. In his criminal trial, he denied having knowledge that his brother had a gun or was armed. And then he argued in his habeas petition that the denial of the impeachment evidence prohibited him from successfully persuading a jury that he was only an accessory after a fact and resulted in his conviction. Now, so after when the DA decided to retry him, a couple of things happened. Mr. Blumberg filed a 1538.5 motion to dismiss, a motion to suppress the gang evidence. He did that because he was concerned that the gang evidence could lead to the gang enhancement, which still existed in the case. That motion was denied, so he was going to have to go to trial with the gang evidence. So what he decided to do, being concerned about that, is he decided to enter into a guilty plea and negotiate a plea in which he was able to persuade the DA to dismiss the criminal charges, to dismiss the gang enhancement and the conspiracy and just result in the benefit of a time-served sentence. Well, so is your argument sort of boiled down to the fact that even though it's really terrible that police officers lie, it's really terrible that Brady and Napoui violations occur or whatever, inured to his benefit overall? He's changed his, if he's allowed to proceed with the Section 1983 lawsuit after being, he gets another shot after making inconsistent positions throughout the progress of the trial. Well, you know, we haven't really nailed down the issue that there is here admittedly false testimony. Is that correct? There was false testimony that was material to vacating the conviction. So he obtained his habeas conviction. Okay. So there's false testimony. So that false testimony would not be admissible to obtain a lawful conviction, would it? No, it would not. And I don't want to interrupt. Okay. Well, if that's the case, I'm talking now about the false testimony, how could that possibly implicate the guilty plea and the conviction that comes later on? Well, Your Honor, it is going back to a heck argument. I was hoping to state that. Well, I am going back to the heck argument. Okay. Because we may or may not buy your estoppel argument. Could you repeat that, Your Honor? Yeah. If you have false testimony and you can't introduce false testimony to support a conviction, how could a 1983 lawsuit based on the claim that there had been false testimony implicate the conviction for his guilty plea? Well, looking at the opinion in the habeas, the court said at a minimum the intent went to all of the crimes for which he was convicted. And the intent that was demonstrated by the false testimony is the exact same intent that was used in the attempted murder. So there's a commonality. But it's separate from the other evidence of intent. It's its own piece of evidence, correct? It is its own piece of evidence. Okay. But if I could return to the judicial estoppel. The inconsistent positions is Mr. Blumberg was able to negotiate a plea that gave him time served. He was able to persuade the DA that he should dismiss the gang enhancement charges, dismiss the conspiracy, again, have time served, and now what he's trying to do is to turn back and say, oh, but now I can actually obtain money damages for the dismissal, those negotiated dismissal of the charges, because they're completely insulated. And another inconsistency was represented in oral argument today, and that is this. Mr. Blumberg, according to the plea transcript, stipulated to a factual basis as set forth in the police reports. Appellant's counsel today represented, well, he said that, but he didn't actually agree to all of the facts in the police reports. And that's yet another inconsistency. So there's a lot of bobbing and weaving for the benefit of getting an advantage. And so I just. But in the final analysis, he pled guilty and the judge accepted it. And the proven tutor, one of those cases said, well, he knew about all this mad stuff. He pled guilty. Run with this guilty plea. And now you're saying, well, it's weird that the prosecutor is really arguing that he's didn't plead guilty properly or whatever. But why not? Why not just start with the second case? He pled guilty. He admitted all the elements. There was no allocution. And he was convicted. Because there's. Then how do you distinguish that from the Jackson case? There's an inherent unfairness in being able to negotiate out the additional charges and then turn around and say, well, now I get to profit from them. Well.  I used to be a lawyer in Chicago. And we didn't do much criminal law, but I had to do it once or twice. And the deals there were dismiss the charge. We won't sue you in a civil case. Very simple. So it really doesn't. Yeah, that's. Unfortunately, that wasn't in the allocution of the guilty plea. But so. Thank you. Thank you. Your Honor, may I just have one minute to address this? No, you've all had way more. You've had about 20 minutes, 25 minutes. So thank you. In the time I have remaining, I just want to make a couple of quick points. One is that the compensatory damages claim, which is the only basis they have suggested that there is an attack on the sentence. I think they're wrong, but that claim is not necessary. It's just an alternative theory of damages. So it's no grounds to apply the heck bar here. Next, as to this materiality notion. As I understand what the defendants are saying, they're saying that Mr. Bloomberg cannot prove materiality for his 1983 claims because he's challenging evidence that was relevant in 1998 to some things that were later part of the plea in 2012. That argument doesn't work because there was other untainted, clean evidence sufficient to support everything that Mr. Bloomberg later pled to. The only problem with that argument is that basically requires us to get into the guts of the documents and what he pled to and an analysis of the foundation for his guilty plea, doesn't it? Respectfully, I don't think it does, Your Honor, because under Ove against Gwinn and Lockett against Erickson, his guilty plea derives from his plea, not from illegal evidence. But the factual basis is based on the police reports. There is a factual basis in the police reports, which contain all kinds of stuff, Your Honor. They say all sorts of things back and forth about whether there was or wasn't gang stuff and all sorts of other things. So then we have to get into that and decide what he had in mind there, and then that goes to challenge whether, you know, what was the basis of his intent, what was the basis of the sentence? I think not, Your Honor. And the reason is that your question now for the HECBAR is whether Mr. Bloomberg necessarily must undermine the 2012 conviction. He need not because that conviction is based on his plea. You don't have to go hunting around because defendants haven't carried their burden to say that the only way that the materiality prong or any other element of the 1983 claims could be proved is by undermining or negating an element of the plea in 2012. They have not carried that burden. It is their burden. Having not carried that, HEC cannot stand. Thank you. Thank you, Your Honor. Let me ask them one question. Sure. What is your amendment going to say, the amendment that you wanted? This was your, you might say, fallback position. Sure. Well, and to be clear, there's going to have to be an amendment on remand because there are allegations that are no longer viable in light of the plea. But none of those allegations are necessary to the claims that Mr. Bloomberg now pursues, procedural due process claims. So it will say that there were Brady and Napui-related violations in 1998, that they were material to the outcome of that trial, that the outcome of that trial would have been different if not for those claims. In doing that, Mr. Bloomberg does not need to negate or undermine in any way the separate conviction on narrower crimes leading to a much shorter sentence that occurred in 2012. Thank you. I'd like to thank all counsel for your arguments. This is a very interesting and difficult case. So thank you. We will take a short break now. And the next case for argument will be Lua v. Miller. So you can come up and get ready for that argument. Thank you.
judges: McKeown, Callahan, Quist